THE STATE OF OHIO *v.* ROY.

(No. C82CRB32005—Decided January 18, 1983.)

Hamilton County Municipal Court.

*Mr. Theodore J. Froncek,* assistant county prosecutor, for plaintiff.

*Mr. Robert B. Newman,* for defendant.

PAINTER, J. Defendant, Jackie Roy, is charged with a violation of R.C. 2917.12. Though the complaint does not allege the violation of a specific subsection, the facts alleged in the complaint would charge a violation of both R.C. 2917.12(A)(1) and (2), by stating as follows:

"* * * Jackie Roy on or about December 5, 1982, in Hamilton County and State of Ohio, with purpose to disrupt a lawful meeting, did interfere with the due conduct of such meeting or make an [*sic*] display which outraged the sensibilities of the group. * * *"

Defendant filed a motion to dismiss on the grounds that R.C. 2917.12(A)(2) is unconstitutional on its face and as applied in this case, and that Subsection (A)(1) is unconstitutional as applied in this case. R.C. 2917.12 states as follows:

"(A) No person, with purpose to prevent or disrupt a lawful meeting, proces-sion, or gathering, shall do either of the following:

"(1) Do any act which obstructs or interferes with the due conduct of such meeting, procession, or gathering;

"(2) Make any utterance, gesture, or display which outrages the sensibilities of the group.

"(B) Whoever violates this section is guilty of disturbing a lawful meeting, a misdemeanor of the fourth degree."

Prior to trial, the prosecution moved to amend the complaint by striking the language charging the violation of Subsection (A)(2), *i.e.,* the language after the "or" in the complaint. Therefore, since defendant no longer stands charged with a violation of that section, it is unnecessary for the court to consider the question of whether that section is unconstitutional, and the court expresses no opinion thereon.

Since it is the court's opinion that the second part of defendant's motion could not be ruled upon without trial of the issue, the motion was overruled; and by agreement of counsel for both parties, the matter proceeded to trial on January 10, 1983. The prosecution called, as its only witness, Emmett Spears, the Vice Mayor of the village of Elmwood Place. After the testimony of Spears, the prosecution rested and the defendant made a motion for acquittal under Crim. R. 29. Therefore, the court must determine "* * * if the evidence is insufficient to sustain a conviction of such offense * * *." Crim. R. 29(A).

Spears testified to the following facts. On December 5, 1982, Spears, as Vice Mayor of the village of Elmwood Place, was serving as Mayor, since the Mayor was absent on that date. There was a lawful meeting of the Council of Elmwood Place in the Village Hall in Elmwood Place, Hamilton County, Ohio. Defendant, Jackie Roy, was present, along with at least a quorum of council members. Said council members included

defendant's wife, who is a councilperson in the village.

A specific conduct which gave rise to the instant charge was described by the prosecuting witness as follows:

"Well, we opened the council meeting up with the reading of the roll call and a resolution. And his wife, Mrs. Roy, had made a statement to the clerk about some accounts, the balance in some of the accounts, and before the clerk could answer I told her why didn't she hush up and let the clerk answer.

"So then the clerk started to answer her again and she butted in again and I said, 'Why don't you shut your mouth?'

"At that time Mr. Roy jumped up and said, 'Don't you tell my wife to shut her mouth.' I said, 'Well, I'm telling you to shut up or I'm going to have you arrested.'

"And then he said, 'Don't you tell her or me either one.'

"So I adjourned the meeting, or called a recess, and had Mr. Coffee that was in the crowd to go up and get the police to come down and arrest Jackie."

Spears further testified that, after the arrest was effected, two council members (including Mrs. Roy) walked out of the meeting. The council then proceeded to complete its agenda. However, with the loss of the two members there was evidently no quorum. Spears was cross-examined by defendant's counsel, as follows:

"Q What was the nature of the business at this Elmwood council meeting, Mr. Spears?

"A The nature of the business was that we had to get in touch with the State Auditor and we had to pass a resolution to that effect for him to come in and make an emergency financial determination of the Village.

"Q Why did you have to do that?

"A Because we're running out of money in Elmwood and we knew we had to do it before we went completely broke.

"Q And is not the auditor here now doing what you all proposed to do on December 5th?

"A Yes, sir.

"Q And what was the other piece of business that was before council, then?

"A The other piece of business was to pass an ordinance to pay a judgment which had been rendered against the Village, but an ordinance wasn't necessary to do that.

"Q So, has that been done, has that business been accomplished?

"Q It would have been done, anyway, yes.

"Q Do you recall what Mrs. Roy was asking of the clerk at the time?

"A Nothing except she wanted to know what— I guess the funds of the recreation. That's what she's usually talking about— The balances in the general funds.

"Q Was she asking the clerk, Mr. Baker—

"A She was asking the clerk, yes.

"Q — questions along those lines?

"A Uh-huh.

"Q And they related to the finances of Elmwood Place?

"A Yes.

"Q And they related, in other words, to the first order of business that was on the agenda at the time; is that correct?

"A This was on the resolution, yes, sir.

"Q You didn't rule her out of order, did you, for asking questions—

"A No.

"Q — that didn't pertain to the business before council?

"A No, what I ruled her was that she wouldn't give the clerk time enough to talk until she interrupted him again.

"Q Do you recall whether or not the clerk ever responded to her questions at all?

"A Well, he started to, yes.

"Q What did he say?

"A Well, I don't know what he said.

"Q You can't recall specifically the

questions and you can't recall the responses?

"A Not the balances that he was talking about, no.

"Q As she was asking questions you interrupted her at one point, did you not?

"A When she interrupted the clerk I told her why don't she wait until the clerk gets done before she interrupts him. And he started to talk again and she interrupted him again. And I told her to keep her mouth shut.

"Q Didn't you tell her to shut up?

"A Okay. I told her to shut up.

"Q You told her to shut up twice, didn't you?

"A Uh-huh.

"Q She is a sitting council person in Elmwood Place?

"A Yes.

"Q And Elmwood Place council people do exercise the prerogative of asking the clerk questions regarding monies available in the budget or monies not available in the budget, do they not?

"A At the proper time, yes.

"Q And she had the floor at the time she was asking questions, did she not?

"A No.

"Q How do you determine who has the floor?

"A Well, the clerk had the floor. He started to answer.

"Q Answer her questions?

"A Right.

"Q But you don't recall the content of his questions or whether they related to her questions?

"A No.

"* * *

"Q Now, after Jackie Roy made his statement to you which you've testified about, did he not leave chambers and walk outside where he had the interchange with Mr. Boehm?

"A That's right.

"Q You didn't ask him— you didn't rule Mr. Roy out of order, did you?

"A No.

"Q You didn't use those words?

"A No, I told him I was going to have him arrested.

"Q You didn't ask him to leave council chambers, did you?

"A No.

"Q He just left council chambers after he made the statement?

"A Following Mr. Boehm outside, yes."

The remainder of the cross-examination consisted of questioning of Spears concerning the political differences and animosities that evidently abound in the village of Elmwood Place. While such evidence might be remotely relevant to the issue of unconstitutionality, if the intent of the actions of the presiding officer were to stifle a political viewpoint, it is the court's opinion that, based on the court's decision herein, it is not necessary to reach that issue, and the court expresses no opinion thereon.

The constitutionality of R.C. 2917.12 (A)(1) has been passed on by our court of appeals in the case of *State* v. *Brand* (1981), 2 Ohio App. 3d 460. In that case, the court, at page 464, defined "substantial" as meaning "major, consequential, effective or significant; it means that the offending act is of considerable quantity or dimension, or of solid effect."

In order to constitute a violation of R.C. 2917.12(A)(1), it is this court's opinion, based on *State* v. *Brand,* that it must be shown that an *act* was undertaken which *substantially* interfered with or obstructed the *due* conduct of the meeting. From the evidence adduced, construed most strongly in favor of the state, it appears that there was an angry and short verbal exchange between Spears and the defendant, immediately after which the defendant left the council chambers. Defendant cannot be deemed to have committed an act which caused a substantial interference with the due conduct of the meeting. By removing himself from the meeting, the defendant allowed the meeting to take whatever due course would be proper. There is certainly no

showing, or allegation, that the defendant caused the members of council to absent themselves from the meeting. Also, there is testimony that the meeting did continue, albeit without a quorum. Defendant cannot be held responsible for that circumstance.

Also, the Committee Comment to R.C. 2917.12 states in part that "[u]nder the section it must be shown that the actor's *specific intention* is to interfere with the due conduct of a gathering or procession * * *." The court finds that there is absolutely no evidence that the defendant's intention was to interfere with the due conduct of the meeting. It might also be noted that the defendant was not ruled out of order, was not asked to leave, but was simply arrested.

Because the court finds that the defendant's conduct was not an intentional substantive disruption of a public meeting, it is not necessary to reach the issue of whether the conviction of defendant could under the within facts conceivably withstand a constitutional challenge.

The Crim. R. 29 motion is granted and defendant is discharged.

*Defendant discharged.*