THE STATE OF OHIO, APPELLEE, *v.* SCHWING, APPELLANT

[Cite as State v. Schwing (1975), 42 Ohio St. 2d 295.]

(No. 74-375—Decided May 21, 1975.)

*Mr. James J. Hughes, Jr.,* city attorney, *Mr. Daniel W. Johnson* and *Ms. Phyllis F. Kunkler,* for appellee.
*Mr. Robert P. App,* for appellant.

CORRIGAN, J. Appellant's first, second and fourth propositions of law are directed to his conviction under former R. C. 2905.301. Appellant's third proposition of law deals

with the constitutionality of former R. C. 3761.11 and will be discussed separately.

## I.

Appellant maintains, in proposition of law No. 1, that the trial court's instruction, removing from the jury the question of fact as to whether appellant's alleged language was obscene and licentious within the meaning of R. C. 2905.301, is erroneous and deprives him of due process of law. Appellant argues that the Court of Appeals cannot render such error harmless by a finding of fact that the language in question constituted "fighting words." Appellant also maintains, in proposition of law No. 2, that application of R. C. 2905.301 to the language here alleged is an unconstitutional application of that section in violation of the First Amendment to the United States Constitution, and, in proposition of law No. 4, that R. C. 2905.301 is vague and overbroad on its face in violation of the First and Fourteenth Amendments to the United States Constitution.

This court recently reversed two convictions for the alleged use of obscene language on a public street. *Columbus* v. *Fraley* (1975), 41 Ohio St. 2d 173. Appellants, in that case, had been convicted under Section 2327.01 of the Columbus Code of Ordinances, which provides:

"No person shall disturb the good order and quiet of the city by * * * using obscene or profane language in any street or other public place * * *."

The expletives for which the appellants, in *Fraley*, were convicted are the same as those used in the present case. This court reversed the obscene language conviction on the basis that, as a matter of law, the language used by the appellants, in that case, was not, in some significant way, erotic and, therefore, not obscene as defined by the United States Supreme Court in *Roth* v. *United States* (1957), 354 U. S. 476, and, subsequently, *Miller* v. *California* (1973), 413 U. S. 15, and as applied to symbolic speech and spoken words in *Cohen* v. *California* (1971), 403 U. S. 15, and *Hess* v. *Indiana* (1973), 414 U. S. 105, respectively.

This has been the position of this court in prior cases involving the same vulgar epithets for which appellant herein was charged with obscene expression. *Columbus* v. *Schwarzwalder* (1974), 39 Ohio St. 2d 61, and *Columbus* v. *Williams* (1973), 36 Ohio St. 2d 7. In *Williams,* we reversed a conviction for the alleged violation of R. C. 2905.-301, basing reversal on *Cohen, supra.* Obscene expression is not protected by the First Amendment to the United States Constitution, but in order to be obscene, such expression must, at the very least, "'* * * appeal to a prurient interest in sex, as that interest is defined by applying contemporary community standards, and must be, in some significant way, erotic." (Paragraph one of the syllabus in *Columbus* v. *Fraley, supra.*)

In the present case, the trial court not only excluded from consideration by the jury an essential question of fact but charged the jury in its instruction that the language allegedly used was, as a matter of law, obscene when the United States Supreme Court and this court have determined that identical language used in similar circumstances was not obscene. *Hess* v. *Indiana, supra* (414 U. S. 105); *Columbus* v. *Schwarzwalder, supra* (39 Ohio St. 2d 61); *Columbus* v. *Williams, supra* (36 Ohio St. 2d 7).

The trial court's instruction in this case was not only prejudicial to appellant's defense to the charge of violating R. C. 2905.301, but clearly erroneous under the decisions previously cited. The error was compounded by the Court of Appeals when that court affirmed appellant's conviction on the basis that the language allegedly used by appellant constituted "fighting words."

In the *Fraley* decision, this court specificallly rejected the contention that a person tried, charged and convicted solely for the use of obscene language could have that conviction affirmed upon a theory that the language constituted "fighting words." See paragraph two of the syllabus in *Fraley, supra.*

This court based the *Fraley* decision on *Cole* v. *Arkansas* (1948), 333 U. S. 196, wherein the defendants were charged under an Arkansas statute prohibiting, in section

one, the use of force and violence and, in section two, promotion of an unlawful assemblage. The trial court instructed the jury solely upon section two and the defendants were convicted. Upon appeal, the Supreme Court of Arkansas affirmed the conviction on the basis that the defendants had violated section one of the statute.

In reversing the conviction, the United States Supreme Court held that the affirmance by the Arkansas Supreme Court constituted a denial of procedural due process, stating:

"* * * It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him on a charge that was never made. * * *" *Cole* v. *Arkansas, supra* (333 U. S. 196, 201).

Here, as in *Fraley, supra,* appellant was convicted on a charge to which he had no opportunity to respond. The Court of Appeals' affirmance on a "fighting words" theory not only denied appellant due process but also rendered R. C. 2905.301 overly broad and vague in its application to the language in question.

Construing the term "licentious" as comprehending "obscene," R. C. 2905.301 prohibits obscene expression. In this respect, the statute is narrow and specific. The appellate court's construction reads into the statute an intent to inflict injury or incite an immediate breach of the peace. That construction also sweeps within the prohibitions of the statute language which may not be obscene under the staandards set out in *Roth* and *Miller, supra.* Clearly, this construction extends the prohibitions of the statute beyond obscene expression and into the area of disorderly conduct. R. C. 2905.301, on its face, gives no notice of the conduct and language proscribed by the appellate court's construction. The purpose of authoritative judicial construction of statutes and ordinances is to narrow and refine overly broad and vague statutes and render them "* * * not susceptible of application to speech, although vulgar or offensive, that is protected by the First and Four-

teenth Amendments.'' *Gooding* v. *Wilson* (1972), 405 U. S. 518, 520. See, also, *Lewis* v. *New Orleans* (1974), 415 U. S. 130; *Cohen* v. *California, supra* (403 U. S. 15, 18-22); *Terminello* v. *Chicago* (1949), 337 U. S. 1, 4-5; and *Cincinnati* v. *Karlan* (1974), 39 Ohio St. 2d 107.

Here, the appellate court construed a narrow and precise statute in such a manner as to render it unconstitutionally vague and overbroad in its application. For the foregoing reasons, appellant's judgment of conviction for violation of former R. C. 2905.301 is reversed and defendant discharged thereon.

## II.

Appellant's third proposition of law is directed to the contention that former R. C. 3761.11 is vague and overbroad, on its face, and violates the constitutional protections of the First and Fourteenth Amendments to the United States Constitution.

Former R. C. 3761.11 (repealed in 1974 and replaced by present R. C. 2917.12) provided:

*"No person shall willfully interrupt or disturb a lawful assemblage of persons or a person while he is at or about the place where such assemblage is to be held,* or is or has been held.'' (Emphasis added.)

It is clear that the statute proscribed two separate categories of conduct: First, willfully interrupting or disturbing a lawful assemblage of persons; and, second, willfully interrupting or disturbing a person while he is at or about the place where a lawful assemblage is to be held, or is or has been held. It appears that *Coates* v. *Cincinnati* (1971), 402 U. S. 611, rendered doubtful the constitutionality of the latter portion of R. C. 3761.11. However, that doubt is irrelevant in this appeal. The record discloses that appellant was charged, tried and convicted solely for violating the first segment of former R. C. 3761.11.* Assum-

---

*The affidavit charging appellant with violating R. C. 3761.11 alleged, in relevant part, that appellant "did unlawfully disturb the lawful assemblage of persons for a meeting inside the Ohio State University

ing that the second segment of the former statute was unconstitutional, it is certainly severable from the first part under the rule set forth in paragraph two of the syllabus in *State* v. *Kassay* (1932), 126 Ohio St. 177. Therefore, the only issue before this court is the constitutionality of that portion of former R. C. 3761.11 which prohibited willful interruption or disturbance of a lawful assemblage of persons.

Both the federal (Amendment I) and the state (Section 3, Article I) constitutions recognize the inherent right of the people to assemble together in meetings. The questioned portion of former R. C. 3761.11 was a legislative attempt to discourage deprivation of this essential right. The authority of the Legislature to enact some type of law prohibiting disruptions of lawful assemblies is clear; if such authority were absent, the right to assemble could be totally nullified by any vociferous or violent individual or gang who opposes the purpose of a meeting.

However, statutes such as former R. C. 3761.11 are susceptible of encroaching upon the constitutional right of freedom of expression. The right to assemble neither guarantees nor seeks a silent and unresponsive audience. As stated by the California Supreme Court in *In re Kay* (1970), 1 Cal. 3d 930, 939-40, 464 P. 2d 142, a case involving a disturbance at a congressman's speech:

"Audience activities, such as heckling, interrupting, harsh questioning, and booing, even though they may be impolite and discourteous, can nonetheless advance the

---

College of Law Building * * * causing general disorder and the meeting to end."

In charging the jury on the alleged violation of R. C. 3761.11, the trial judge simply read the statute and then stated:

"If you find from the evidence beyond a reasonable doubt that the defendant Eric Albert Schwing did willfully interrupt or disturb the meeting at the Ohio State Law School on the 18th day of May, 1972, you will find the defendant guilty. If you do not so find, you will return a verdict of not guilty."

The verdict forms given the jury were captioned: "OFFENSE Prohibition Against Disturbing Meetings."

goals of the First Amendment. For many citizens such participation in public meetings, whether supportive or critical of the speaker, may constitute the only manner in which they can express their views to a large number of people; the Constitution does not require that the effective expression of ideas be restricted to rigid and predetermined patterns. (*NAACP* v. *Button* [1963], 371 U. S. 415, 431 [9 L. Ed. 2d 405, 417, 83 S. Ct. 328].) A cogent remark, even though rudely timed or phrased, may 'contribute to the free interchange of ideas and the ascertainment of truth.' (*Garrison* v. *Louisiana* [1964], 379 U. S. 64, 73 [13 L. Ed. 2d 125, 132, 85 S. Ct. 209]; see *Gaddis* v. *State* [1920], 105 Neb. 303 [180 N. W. 590, 591, 12 A. L. R. 64].) An unfavorable reception, such as that given Congressman Tunney in the instant case, represents one important method by which an officeholder's constituents can register disapproval of his conduct and seek redress of grievances. The First Amendment contemplates a *debate* of important public issues (*New York Times Co.* v. *Sullivan, supra* [376 U. S. 254, 270 (11 L. Ed. 2d 686, 700, 84 S. Ct. 710, 95 A. L. R. 2d 1412)]); its protection can hardly be narrowed to the meeting at which the audience must passively listen to a single point of view. The First Amendment does not merely insure a marketplace of ideas in which there is but one seller. (Compare *Lamont* v. *Postmaster General* [1965], 381 U. S. 301, 308 [14 L. Ed. 2d 398, 403, 85 S. Ct. 1493] [Brennan, J. concurring].)

"The very possibility of adverse audience reaction may aid in the correction of evils which would otherwise escape opposition. Government officials might attempt to advance a partisan political cause by forcing the audience at a publicly financed event, such as a display of fireworks, to listen first to speakers of a particular persuasion. (Compare *Red Lion Broadcasting Co.* v. *Federal Communications Com.* [1969], 395 U. S. 367 [23 L. Ed. 2d 371, 89 S. Ct. 1794, 1807-1808]; *Cox* v. *Louisiana, supra,* 379 U. S. 536, 557-558 [13 L. Ed. 2d 471, 485-486, 85 S. Ct. 453].) An astute and disputatious audience could deter such practices. Al-

though a public official usually occupies a far better position than the ordinary citizen to publicize his views by the communications media, those who disagree with such an official may be able to proclaim disagreement by criticism to his face. Audience response, moreover, may force a speaker to discuss a difficult issue that he may wish to avoid, or to explain some past conduct that he hopes will be forgotten.

"The public interest in an active and critical audience has long been recognized. The heckling and harassment of public officials and other speakers while making public speeches is as old as American and British politics; here, as in Great Britain, such protestant conduct has been thought to lie outside the realm of legal regulation except in the most egregious of cases. Justice Black, dissenting in *Feiner* v. *New York* (1951), 340 U. S. 315, 325-326 [95 L. Ed. 295, 302-303, 71 S. Ct. 303], remarked: 'It is neither unusual or unexpected that some people at public street meetings mutter, mill about, push, shove, or disagree, even violently, with the speaker. Indeed, it is rare where controversial topics are discussed that an outdoor crowd does not do some or all of these things.' In *Payroll Guar. Assn.* v. *Board of Education* (1945), 27 Cal. 2d 197, 202-203 [163 P. 2d 433, 16 A. L. R. 1300], we stated: 'Speakers who express their opinions freely must run the risk of attracting opposition; they cannot expect their opponents to be silenced while they continue to speak freely.' In *Landry* v. *Daley* (N. D. Ill. 1968), 280 F. Supp. 968, 970, the court commented: 'Political campaigns, athletic events, public meetings and a host of other activities produce loud, confused or senseless shouting not in accord with fact, truth, or right procedure to say nothing of not in accord with propriety, modesty, good taste or good manners. The happy cacophany of democracy would be stilled if all "improper noises" in the normal meaning of the term were suppressed.' "

The first portion of former R. C. 3761.11 made no distinction between constitutionally protected interruptions of a lawful assemblage and interruptions or disturbances

which substantially impinge on the right of assembly and which are, therefore, subject to governmental regulation. Consequentlly, that segment of the former statute was, on its face, unconstitutionally overbroad. It appears that there should be an effort made to restrict the applicability of the statute to constitutionally unprotected activity. In *Cincinnati* v. *Hoffman* (1972), 31 Ohio St. 2d 163, certiorari denied, 410 U. S. 920, and in *Cincinnati* v. *Karlan* (1973), 35 Ohio St. 2d 34, vacated and remanded for further consideration, 416 U. S. 924, judgment reaffirmed, 39 Ohio St. 2d 107, this court considered the constitutionality of Cincinnati Ordinance 901-d4, which reads:

"It shall be unlawful for any person to willfully conduct himself or herself in a noisy, boisterous, rude, insulting or other disorderly manner, with the intent to abuse or annoy any person or the citizens of the city or any portion thereof."

In each of those cases, this court upheld the ordinance; in *Cincinnati* v. *Hoffman, supra* (31 Ohio St. 2d 163), at 168, this court stated:

"* * * *As reasonably construed,* the ordinance neither prohibits the lawful exercise of any constitutional right nor escapes the understanding of any person of 'common intelligence' who desires to obey it." (Emphasis added.)

The language of R. C. 3761.11 is more amenable to judicial construction and narrowing than was the Cincinnati ordinance, construed and upheld in the *Hoffman* and *Karlan* cases. The first portion of former R. C. 3761.11 prohibited any willful interruption or disturbance of a lawful meeting. Some such interruptions or disturbances can be constitutionally proscribed. Therefore, by simply narrowing the broad statutory provision in such a manner that it extends only to constitutionally unprotected activities, this court does not transform it into a prohibition against a form of conduct not formerly prohibited by the statute. Instead, we merely remove from the statute any prohibition against constitutionally protected interruptions or disturbances.

Those willful interferences or disturbances of lawful

306

assemblages which are not constitutionally protected are of two types. First, those which cause a lawful asemblage to terminate in an untimely manner. Second, those which substantially impair the conduct of the assemblage. See *In re Kay, supra* (1 Cal. 3d 930). Construing the first portion of R. C. 3761.11 as prohibiting only those two types of willful interferences or disruptions, the statutory provision was not unconstitutionally overbroad.

The statutory construction which is both necessary and proper to eliminate the overbreadth of the literal wording of former R. C. 3761.11 also eliminates any vagueness problem which that wording engendered. Surely there is no uncertainty surrounding a statutory prohibition against willful interference or disturbance which prematurely terminates a lawful assemblage. And just as surely, a prohibition against willful acts which substantially impair the conduct of a meeting is just as definite as an ordinance, recently upheld by the United States Supreme Court, which stated: "[N]o person * * * shall willfully make or assist in the making of any noise or diversion which disturbs or tends to disturb the peace or good order of [a] school session or class thereof * * *." *Grayned* v. *Rockford* (1972), 408 U. S. 104.

The affidavit charging appellant with violating former R. C. 3761.11 alleged that his actions caused the meeting to end. Such conduct is not constitutionally protected. However, the trial court's charge to the jury did not narrow the scope of former R. C. 3761.11. Therefore, because this court can and should narrow the statute, appellant's conviction for violating R. C. 3761.11 is reversed and the defendant is discharged thereon.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.