**Gardell Anthony MOREHEAD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 0540–88.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 16, 1991.

Rehearing Overruled March 6, 1991.

Howard C. Rubin, Dallas, for appellant.

John Vance, Dist. Atty., Pamela Sullivan Berdanier, Robert Montserrat, Neil Pask, Asst. Dist. Attys., Dallas, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant, Gardell Anthony Morehead, was found guilty of the Class B misde-

meanor offense of disrupting a lawful meeting. Tex. Penal Code § 42.05. The jury assessed punishment at incarceration for 30 days, probated, and a fine of $250. The Fifth Court of Appeals affirmed appellant's conviction. *Morehead v. State*, 746 S.W.2d 830 (Tex.App.—Dallas 1988). We granted appellant's petition for discretionary review, pursuant to Texas Rule of Appellate Procedure 200(c)(2), in order to determine whether the penal statute under which he was convicted is overbroad and unenforceable under the free speech guarantees of the First and Fourteenth Amendments to the United States Constitution.[1] Having found the statute overbroad, we will reverse.

The uncontradicted evidence at trial established the following: On August 6, 1985, appellant attended a session of the national convention of a sorority at the Dallas Convention Center. Jesse Jackson, the civil rights leader and sometime presidential candidate, was the speaker. Jackson showed a film and then began a speech. There was no question and answer period, and the audience of approximately 6,500 persons was not expected to participate except by listening. About halfway through Jackson's speech, appellant rose from his seat and began walking down the center aisle of the auditorium toward the podium. As he reached the front of the auditorium, he began yelling quite loudly that Jackson was a liar. He also yelled out questions to Jackson about South Africa and the International Monetary Fund.

When appellant first began yelling, Jackson tried to continue his speech. Eventually, however, Jackson stopped his speech and stepped back from the podium. Two plainclothes police officers then approached appellant and told him he would have to leave. Appellant refused and continued his yelling, and the police officers, after a brief struggle, escorted him up the aisle and out of the auditorium. He continued yelling until he was out of the auditorium, at which time Jackson resumed his speech. The entire incident lasted one to two minutes.

Appellant was subsequently charged and found guilty of violating Texas Penal Code § 42.05, which provides in relevant part:

> A person commits an offense if, with intent to prevent or disrupt a lawful meeting, procession, or gathering, he obstructs or interferes with the meeting, procession, or gathering by physical action or verbal utterance.

The court of appeals agreed with appellant that § 42.05, "if read literally, ... prohibits some constitutionally protected activity" and that the statute is, therefore, "unconstitutionally broad." 746 S.W.2d at 835. The court held, however, that the statute "can be narrowed to reach only unprotected expression if it is construed to prohibit only speech and physical action incompatible with the normal activity of a particular place at a particular time." *Id.* The court then went on to affirm appellant's conviction because, from the court's reading of the evidence, appellant's activity on the day in question "clearly violated the implicit rules of conduct for a formal meeting for members of the sorority, their invited guests and the press." 746 S.W.2d at 836.

In his petition for discretionary review, appellant argues that it was inappropriate for the court of appeals to "assume the legislative prerogative and rewrite [§ 42.-05] in order to save it" because the statute is, on its face, "clear and unambiguous." Appellant's Brief at 14–15. The State argues in response (1) that § 42.05 is not overbroad because it was "narrowly tailored" to further the government's significant interests in the preservation of order and our citizens' freedom to attend, and speak at, meetings, and (2) that if the statute is overbroad, the court of appeals' narrowing construction cured it.

The elements of First Amendment overbreadth analysis, as developed by the

---

1. In his brief before this Court, appellant also cited the free speech guarantee contained in Article I, § 8 of the Texas Constitution. However, because appellant provided no argument or authority as to the protection provided by the Texas Constitution, we consider the point inadequately briefed and will not address it. *See* Tex.R.App.P. 74(f) and 203; *McCambridge v. State*, 712 S.W.2d 499, 501–502 fn. 9 (Tex.Cr. App.1986).

United States Supreme Court, are familiar. See generally L. Tribe, *American Constitutional Law* § 12–27 (1988). A statute is impermissibly overbroad if, in addition to proscribing activity which may be forbidden constitutionally, it sweeps within its coverage a *substantial* amount of expressive activity which is protected by the free speech guarantee of the First Amendment.[2] *Bynum v. State*, 767 S.W.2d 769, 772 (Tex. Cr.App.1989). An individual *whose own expressive activity may validly be prohibited* is permitted nonetheless to challenge a statute as overbroad because it also threatens others not before the court. *Dubuisson v. State*, 572 S.W.2d 694, 696 (Tex.Cr. App.1978). "This result is deemed justified since the otherwise continued existence of the statute in unnarrowed form would tend to suppress constitutionally protected rights." *Coates v. Cincinnati*, 402 U.S. 611, 619–620, 91 S.Ct. 1686, 1691, 29 L.Ed.2d 214 (1971).

The first question we must address, then, is whether § 42.05 criminalizes a substantial amount of protected expressive activity.

■ "The constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within narrowly limited classes of speech." *Gooding v. Wilson*, 405 U.S. 518, 521–522, 92 S.Ct. 1103, 1105–1106, 31 L.Ed.2d 408 (1972). Even as to such classes, "the statute must be carefully drawn or be authoritatively construed to punish only unprotected speech." *Id.* For example, the states may, by narrowly drawn statutes, prohibit obscenity, *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), child pornography, *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), "fighting words", *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), and the incitement to imminent lawless activity, *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). On the other hand, the states may not criminalize speech that is merely insulting, *Gooding v.*

*Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408, or speech that opposes or challenges police action, *Houston v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). "Speech is often provocative and challenging ... [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Terminiello v. Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949).

■ The evident purpose of § 42.05 is to protect the freedom of persons at meetings to speak and to listen. Even with the Supreme Court's instruction in *Terminiello*, we have no doubt that the State has a legitimate, even compelling, interest in ensuring that some individuals' unruly assertion of their rights of free expression does not imperil other citizens' First Amendment freedoms. Still, in the pursuit of this interest, the government may not forbid expressive conduct that is merely provocative or challenging and that does not curtail the exercise of others' rights. "The right to free expression articulated through 'disturbances' that are no more than announced differences in ideology or beliefs lies at the heart of the First Amendment; governmental prohibition of such activity, under any statutory scheme, could not constitutionally be countenanced." *In re Kay*, 1 Cal.3d 930, 83 Cal.Rptr. 686, 693, 464 P.2d 142, 149 (1970).

Professor Steele, writing shortly after § 42.05 was adopted, concluded that it is unconstitutionally overbroad:

[Section 42.05 is] designed to prevent conduct which disrupts a lawful meeting. Of course that purpose is laudable—indeed, it is a form of protection for the First Amendment rights of those gathered at the meeting. However, [this] section[ ] [is] suspect because [it is] overbroad.... The operative language of Section 42.05 is "obstructs or interferes ... by physical action or verbal utterance." Officers enforcing [this] stat-

---

**2.** The First Amendment was made applicable to the states by the due process clause of the Four-teenth Amendment. *Gitlow v. New York*, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925).

ute[ ] are provided the opportunity to arrest people who are merely petitioning for redress of grievances. Some impairment of order at meetings (especially public meetings of governmental bodies) is simply the unavoidable price of maintaining a system of dynamic expression envisioned by the First Amendment. We must expect that ... some meetings will be "obstructed" by "verbal utterance." Individuals and groups proposing change are often driven to aggressive, even militant, conduct. That has been the history of all important social and political movements in this country, from the Boston Tea Party to the Black Revolution.

W. Steele, *The Impact of the New Penal Code on First Amendment Freedoms*, 38 Tex.B.J. 245, 254 (1975).

■ Section 42.05, by its literal language, prohibits *any* physical or verbal "obstruction" or "interference" with a lawful meeting, procession, or gathering by anyone who has the intent to prevent or disrupt such affair. The dictionary defines "obstruct" as "hinder from passage, action, or operation;" "interfere" is defined as "interpose in a way that hinders or impedes." *Webster's Ninth New Collegiate Dictionary* 631, 816 (1983). Clearly, these statutory terms encompass the full range of possible disturbances, from the most minor to the most significant. Equally clearly, the Constitution does not allow all such disturbances to be criminalized. The statute is, therefore, overbroad. *See In re Kay*, 83 Cal.Rptr. 686, 464 P.2d 142; *State v. Schwing*, 42 Ohio St.2d 295, 328 N.E.2d 379 (1975) (both cases holding statutes similar to § 42.05 overbroad). We further conclude that the statute's deterrent effect on protected expression is substantial.

■ Although § 42.05 is impermissibly overbroad on its face, we need not invalidate it if it is susceptible to a narrowing construction consistent with its language and apparent purpose. *Dubuisson v. State*, 572 S.W.2d at 699. We recognize that "the judicial option to avoid overbreadth is not without its limits.... A court may not simply assume the legislative prerogative and rewrite a statute in

order to save it if the statute is not readily subject to a narrowing construction." M. Nimmer, *Nimmer on Freedom of Speech* § 4.11[D] at 4–156 (1984). We conclude, however, that § 42.05 is readily subject to a narrowing construction. Given the competing First Amendment freedoms at stake, § 42.05 can be rendered constitutional if it is construed to criminalize only physical acts or verbal utterances that *substantially* impair the ordinary conduct of lawful meetings and thereby curtail the exercise of others' First Amendment rights. *See In re Kay*, 83 Cal.Rptr. 686, 464 P.2d 142; *State v. Schwing*, 328 N.E.2d 379 (both cases construing statutes similar to § 42.05 to criminalize only activity substantially impairing the conduct of meetings). This construction achieves the apparent legislative purpose while preserving the statutory language and the delicate balance between competing freedoms.

■ Because the jurors were not charged on § 42.05 as narrowed by this opinion, it is possible they convicted appellant for activity that is constitutionally protected; therefore, appellant's conviction may not stand. *Terminiello v. Chicago*, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131; *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). The judgment of the court of appeals is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion.

TEAGUE, J., dissents.

MALONEY, J., not participating.

CLINTON, Judge, dissenting.

I am unable to conclude that § 42.05 is "readily subject to a narrowing construction." Its language is plain and its meaning unambiguous; its constitutionality cannot turn upon a choice between one of several possible meanings. Nor can the statute be limited by severing discrete unconstitutional subsections from other subsections. The only way for the statute to be saved is for this Court to add considerable language to it; i.e., for us literally to engage in judicial legislation. *See* W.

Steele, 38 Tex.B.J. at 254 ("[I]t is difficult to imagine how the appellate courts can narrow [§ 42.05] sufficiently to save [it] from unconstitutionality."); *Houston v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (ordinance is not susceptible to narrowing construction when its meaning is unambiguous); *Erznoznik v. Jacksonville*, 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975) (ordinance in question "by its plain terms is not easily susceptible of a narrowing construction").

Nevertheless, the majority tries its hand at legislation, amending the statute to forbid—presumably in the content of this cause—"only physical acts or verbal utterances that *substantially* impair the ordinary conduct of lawful meetings and thereby curtail the exercise of others' First Amendment rights." Slip Opinion, at 5 (emphasis in original). In my judgment, use of such subjective terms as "substantially", "ordinary" and "curtail" now render the statute so vague and ambiguous as to jeopardize exercise of constitutionally protected rights by an actor and "others" as well.

We should hold that § 42.05 is facially overbroad in violation of the First Amendment as applied to the states by the Fourteenth Amendment, reverse the judgments of the court of appeals and the trial court and order the prosecution dismissed.