OPINION
Defendant Kathy Moore appeals from her convictions for disrupting school activities and criminal trespass. For the reasons set forth below, we reverse defendant's conviction for disrupting school activities, and affirm her conviction for criminal trespass.
On April 23, 1998, defendant was issued citations for disrupting school activities and trespass, in violation of the Codified Ordinances of the City of Euclid, in connection with an incident during which she brought her son to Glenbrook Elementary School. Defendant pleaded not guilty and the matter proceeded to a jury trial on July 6, 1998.
The city prosecutor presented the testimony of Nancy Smialek, John Coppenhager, Joseph Madachy, and Richard Shisila.
Nancy Smialek testified that she is a first grade teacher at Glenbrook Elementary and that defendant's son, Bradley, was a student in her 1997-1998 class. Ms. Smialek testified that Bradley was frequently tardy to school and that on these occasions, defendant generally walked Bradley into the classroom and got him seated. On these occasions, defendant sometimes spoke to Smialek even though class had already begun. Smialek stated that it was not fair to stop the lesson in order to respond, so she "would just keep going." On some occasions, defendant spoke to some of the children in the class.
Smialek spoke to the principal, Mr. Shisila, about the matter and complained that defendant's frequent visits were disruptive. They informed defendant that if she wished to observe the class, she would have to prearrange it with the school office. She was sent a letter which reiterated these instructions.
Ms. Smialek further testified that parents are welcome to walk their children into the building before the start of school. After 8:30 a.m., parents must report to the office to register children who are tardy. Parents are considered visitors at this point and must obtain a visitor's pass.
On March 24, 1998, defendant brought Bradley into his classroom after 8:30 a.m. She did not register with the office and did not obtain a visitor's pass. Defendant hung Bradley's coat in the closet and got his things out of his school bag. Smialek testified that she believes that defendant spoke to her but she could not recall what, if anything, defendant said. Smialek did not stop the lesson, and "kept going, * * * kept teaching." After a few minutes, defendant then left the classroom on her own and was not asked to leave.
John Coppenhager testified that in 1998 he was the assistant Director of Security for Euclid Schools. In March 1998, he received three reports that defendant was disruptive. He met with defendant on March 18, 1998, and informed her of the school's policy regarding visitation and reporting her presence with the school office. At this time, she was given a letter which stated in relevant part as follows:
 As a courtesy, visitations and observations should be arranged 24 hours in advance. During all future visits/observations to any classroom at Euclid City Schools, Glenbrook included, parents must adhere to the following procedures. All visitors or observers will:
 * Sign in at the Main Office and will receive a yellow, visitor's badge
 * Refrain from speaking to students and staff during observations
* Talk to their child in the hallways if needed
 * Be escorted off school property by a Euclid City Schools Administrator, Security, or the Euclid Police if not in compliance with the outlined procedures.
Euclid Police Officer Joseph Madachy testified that he has responded to reports of defendant causing disturbances at the school. During one such response, he outlined the instructions as stated in the letter, and advised defendant that if she did not adhere to the school policies, she could receive a criminal citation.
Richard Shisila testified that there are notices on the doors of the building which indicate that visitors must report to the office. By January 1998, visitors were given passes. Tardy children must be signed in at the main desk or at the clinic.
Mr. Shisila testified that prior to March 24, 1998, he repeatedly asked defendant to sign in and to have Bradley walk to his class alone so that the class would not be disturbed. On one instance, defendant stated that she was not a visitor but was merely accompanying her son to his class. Shisila reiterated that the policy of signing in applies in these instances. Following subsequent violations of the policy, Shisila began to report the matter to security.
Finally, Shisila testified that on March 24, 1998, defendant signed Bradley in at the clinic before walking him into his classroom, but, he stated, she did not have permission to take her son directly to his classroom and did not obtain a visitor's pass.
Defendant elected not to present evidence. She was subsequently convicted of both charges and sentenced to ten days incarceration (suspended), one year active probation, and ordered to attend parenting classes. Defendant now appeals and assigns three errors for our review. For the sake of clarity we shall address the errors our of their predesignated order.
Defendant's third assignment of error states:
 SECTION 537.24 (a) OF THE EUCLID CODIFIED ORDINANCES IS UNCONSTITUTIONAL AS VOID FOR VAGUENESS.
Herein, defendant asserts that Section 537.24 (a) of the Codified Ordinances of the City of Euclid does not contain ascertainable standards of guilt.
The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the language of a criminal statute to be sufficiently definite "to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." State v. Earlenbaugh (1985), 18 Ohio St.3d 19,21. A statute must be sufficiently clear in defining the activity proscribed so that it informs persons subject to it's provisions what conduct on their part will render them liable to the statute's penalties. Columbus v. Thompson (1971),25 Ohio St.2d 26, 30. "A law which forbids the doing of an act in terms so vague that people of ordinary intelligence must guess at its meaning violates that person's right to due process of the law." Singer v. Cincinnati (1990), 57 Ohio App.3d 1, 3-4.
In Grayned v. Rockford (1972), 408 U.S. 104, 120,92 S.Ct. 2294, 2304, the Supreme Court of the United States recognized that, in order to prevent interference with schools, municipalities may forbid willful activity which disrupts or is about to disrupt normal school activity. The Court stated:
 Although the prohibited quantum of disturbance is not specified in the ordinance, it is apparent from the statute's announced purpose that the measure is whether normal school activity has been or is about to be disrupted. We do not have here a vague, general `breach of the peace' ordinance, but a statute written specifically for the school context, where the prohibited disturbances are easily measured by their impact on the normal activities of the school. Given this `particular context,' the ordinance gives `fair notice to those to whom (it) is directed.'
Turning to the law of this state, in State v. Schwing (1975),42 Ohio St.2d 295, the Ohio Supreme Court reviewed former R.C.3761.11. This statute, which was repealed in 1974 and replaced by present R.C. 2917.12, prohibited disturbing a lawful meeting and provided in relevant part as follows:
 No person shall willfully interrupt or disturb a lawful assemblage of persons * * *.
The court held that this language[1] did not properly distinguish between constitutionally protected interruptions of a lawful assemblage and interruptions which substantially impinge on the right of assembly and which are, therefore, subject to government regulation. Thus, the court construed the statute to prohibit only those willful interferences or disturbances of lawful assemblage which cause the assemblage to terminate in an untimely manner and those which substantially impair the conduct of the assemblage. This construction was undertaken to eliminate both vagueness and overbreadth problems. Id. at 306.
The present equivalent of R.C. 3761.11 is contained within R.C.2917.12 (A). Id.; State v. Brand (1981), 2 Ohio App.3d 460. This statute provides:
 (A) No person, with purpose to prevent or disrupt a lawful meeting, procession, or gathering, shall do either of the following:
 (1) Do any act which obstructs or interferes with the due conduct of such meeting, procession, or gathering;
 (2) Make any utterance, gesture, or display which outrages the sensibilities of the group.
In State v. Brand, supra, the court stated:
 The Schwing decision was rendered after the repeal of R.C. 3761.11 and after the enactment of R.C. 2917.12, which replaced it. We believe that the Supreme Court's limiting construction must apply to the new statute, thereby saving it from unconstitutional overbreadth.
In this instance, defendant was charged with disrupting school activities in violation of Section 537.24 of the Codified Ordinances of the City of Euclid which provides in relevant part as follows:
 (a) No person shall assault, strike, threaten or menace a teacher, instructor, professor, person in charge of a class of students or any employee of any school, college or university while in the performance of their duties, and no person shall disrupt, disturb or interfere with the teaching of any class of students, and no person shall disrupt, disturb or interfere with any activity conducted in a school, college or university building, or upon the campus or grounds thereof, or in any public place, * * *.
Defendant asserts that the ordinance does not reflect the requirements of Grayned or Schwing by failing to require willful conduct and conduct which either causes the class to terminate in an untimely manner or substantially impairs the conduct of the classroom. We agree that the pronouncements by the Supreme Court of the United States and the Supreme Court of this state influence the interpretation of this ordinance. We therefore hold that the ordinance is vague as written and overbroad as written and must be construed to prohibit only willful conduct and conduct which either causes the class to terminate in an untimely manner or substantially impairs the conduct of the classroom. Accord State v. Schwing, supra.
This assignment of error is therefore well-taken but in light of our duty to invoke an acceptable construction in applying the statute, this assignment of error is not dispositive herein.
Defendant's first assignment of error states:
 THE EVIDENCE PRESENTED AT TRIAL WAS LEGALLY INSUFFICIENT TO SUPPORT DEFENDANT'S CONVICTIONS.
Within this assignment of error, defendant asserts that the Ordinance prohibiting disrupting school activities actually sets forth four elements which must be satisfied in order for a violation to be established. She maintains that there is insufficient evidence to support her conviction for this offense. Defendant further asserts that the evidence is insufficient to support her conviction for criminal trespass.
In State v. Thompkins (1997), 78 Ohio St.3d 380, 386, the Supreme Court stated:
 "`sufficiency'" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29 (A) (motion for judgment of acquittal can be granted by the trial court if the evidence is legally insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
In State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, the Court described the role of the appellate court in reviewing a challenge to the sufficiency of the evidence supporting a conviction:
 An appellate court's function when reviewing the sufficiency of evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Id., at paragraph two of the syllabus, citing Jackson v. Virginia
(1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 520.
Moreover, the credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
With regard to defendant's claim that the ordinance sets forth four elements, each of which must be established to support a conviction, we note that pursuant to R.C. 1.02 (F), the term "and" may be read as "or" and "or" may be read as "and" "if the sense requires it." In this instance, Section 537.24 uses the term "and" to list all of the conduct which is prohibited within the ordinance. The term "and" should therefore be read as "or," and this portion of the assigned error is without merit.
As to whether the evidence was sufficient to establish that defendant disrupted, disturbed, or interfered with the teaching of any class of students or that defendant disrupted, disturbed, or interfered with any activity conducted in a school, we note, in accordance with our discussion of the previous assignment of error, that this portion of Section 537.24 must be construed to prohibit only willful conduct and conduct which either causes the class to terminate in an untimely manner or substantially impairs the conduct of the classroom. Accord State v. Schwing, supra. We therefore apply these additional elements.
In this matter, there was no evidence that defendant's conduct was willful and there was no evidence that her conduct caused the lesson to terminate in an untimely manner or that defendant substantially impaired the conduct of the lesson. Defendant's conviction under this charge is therefore unsupported by sufficient evidence.
With regard to the charge of criminal trespass, the ordinance tracks R.C. 2911.21 and states:
 (a) No person, without privilege to do so, shall do any of the following:
 (1) Knowingly enter or remain on the land or premises of another;
 (2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows he is in violation of any such restriction or is reckless in that regard;
 (3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access;
 (4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified to do so by the owner or occupant, or the agent or servant of either.
 (b) It is no defense to a charge under this section that the land or premises involved was owned, controlled, or in custody of a public agency.
The Committee Comments to R.C. 2911.21 further provides:
 All of the four separate types of conduct defined as criminal trespass require that such conduct be unprivileged.
 Division (A) (2) covers the situation in which the land or premises involved are subject to rules on access or use, and the offender knows or has reasonable cause to believe he is in violation of the rules. This division covers, for example, persons who go into or stay in a public building after hours, or use a door marked "employees only," or swim in a no-swimming zone at a state lake, or pitch a tent in a portion of a campground reserved for travel trailers, or loiter in or about a school without having any business there.
 Division (A) (3) covers the situation where notice of restricted access is given in some manner, and the offender disregards the risk that he is intruding. The notice may be given in a variety of ways, including a verbal warning, or written notice, or by posting in a reasonably conspicuous way, or by barricade, fencing, or other enclosure obviously meant to restrict access. This division covers, for example, unauthorized entry onto a farm through the back fence, or going in front of the ropes marking the fairway at a golf tournament, or climbing the fence for a midnight swim at a public pool, or by-passing a check point at the entrance to a campus temporarily imposing restricted access.
For prosecutions pursuant to R.C. 2911.21 (A) (2), restrictions on the entry of land must be communicated to those entering.State v. McMechan (1988), 48 Ohio App.3d 261, 262. The prosecution is also required to show beyond a reasonable doubt that defendant did knowingly remain on the land or premises of another and was not privileged to be there. Mariemont v. Wells
(1986), 33 Ohio Misc.2d 9, 10.
In Columbus v. Andrews (February 27, 1992), Franklin App. Nos. 91AP-590, 91AP-880 and 91AP-881, unreported, the court considered the defendant-father's claim that he possessed a privilege to enter his son's school based upon his status as a parent of a child enrolled at that school. The court noted that although a privilege could arise out of that status or relationship, there may be certain circumstances under which the privilege may be revoked and the existence of those circumstances and the scope of the purported authority to revoke the privilege are questions for the jury to decide. Accord Columbus v. Andrews (March 18, 1993), Franklin App. Nos. 92AP-1340-1342, unreported. Further, in Statev. Jones (Nov. 17, 1992), Hamilton App. Nos. C-820020, C-820028, C-8002029, unreported, the court upheld a conviction for criminal trespass despite defendant's claim that he had a privilege to enter the school where the defendant went into a posted area without the required clearance. But, see, State v. McGroaty (Oct. 31, 1997), Lake App. No. 96-L-158, unreported (parent's conviction for criminal trespass at her child's school was reversed where the state failed to demonstrate that the school board barred her from school and she was present in order to attend a public meeting for parents of children with special needs which was held there).
In this instance, the jury could conclude that although defendant was certainly privileged to accompany her son, the numerous previous instances in which defendant entered without following established procedures, and without obtaining a pass, led to a revocation of the privilege under these particular circumstances. That is, the existence of circumstances under which the privilege may be revoked and scope of the purported authority to revoke the privilege are questions for the jury to decide. Accord Columbus v. Andrews, supra. We are therefore compelled to affirm the jury's determination that defendant is guilty of criminal trespass.
We do not reach this decision lightly. We recognize and respect defendant's inherent authority over her own child. While it is clear that schools have the authority to restrict access in light of repeated failures to follow required procedures, we urge the schools to act with respect and sensitivity in such instances. Clearly, this particular matter arose from defendant's desire to create a presence at the school in order to protect her son who had been victimized in the past. This matter perhaps could have been avoided if defendant's concern with this underlying problem had been remedied.
This assignment of error is well-taken insofar as it pertains to defendant's conviction for disrupting school activities, and is not well-taken insofar as it pertains to defendant's conviction for criminal trespass.
Defendant's second assignment of error states:
 THE JURY'S VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Defendant next asserts that her convictions are against the manifest weight of the evidence. As we have reversed defendant's conviction for disrupting school activities, we shall consider this claim solely with reference to the criminal trespass charge.
In analyzing the evidence adduced at trial on a claim that the verdict is against the manifest weight of the evidence, an appellate court should review the evidence de novo to determine whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, 273. In making this determination, the appellate court should consider the following factors set forth in State v. Mattison (1985), 23 Ohio App.3d 10:
 1. Awareness that even a reviewing court is not required to accept as true the incredible.
2. Whether evidence is uncontradicted.
3. Whether a witness was impeached.
4. Attention to what was not proved.
5. The certainty of the evidence.
6. The reliability of the evidence.
 7. The extent to which a witness may have a personal interest to advance or defend by their testimony.
 8. The extent to which the evidence is vague, uncertain, conflicting, or fragmentary.
The appellate court must further be mindful that its power to reverse a judgment as against the manifest weight of the evidence is to be exercised with extreme caution and only in the exceptional case where the evidence weighs manifestly against conviction. State v. Banks (1992), 78 Ohio App.3d 206, 214. Further, reversal of a jury verdict as being contrary to the weight of the evidence requires the concurrence of all three appeals court judges hearing the case. Art. IV, Sec. 3 (B) (3) of the Ohio Constitution provides that "* * * no judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause."
In this instance, the city demonstrated that defendant was repeatedly informed of the nature of her privilege to be within the school and that she entered and remained at the school without signing in and therefore without a privilege to enter. Defendant presented no evidence. We therefore reject defendant's claim that her conviction for this offense was against the manifest weight of the evidence. This claim is therefore without merit.
Defendant's conviction for disrupting school activities is reversed, her conviction for criminal trespass is affirmed.
It is ordered that appellee and appellant split the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Euclid Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SPELLACY, J., CONCURS, BLACKMON, J., DISSENTS (SEE ATTACHEDDISSENTING OPINION).
 ________________________________ ANN DYKE PRESIDING JUDGE
[1] The remaining language of the statute which prohibited interrupting or disturbing a person present at a meeting was not relevant to the matter. Id.