# NO. 12-17-00346-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

|  |  |  |
|---|---|---|
| *EX PARTE:* | § | *APPEAL FROM THE* |
|  | § | *COUNTY COURT AT LAW NO. 2* |
| *JORDAN BARTLETT JONES* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

The State filed a motion for rehearing,[1] which is overruled. We withdraw our opinion dated April 18, 2018, and substitute the following opinion in its place.

Jordan Bartlett Jones was charged with unlawful disclosure of intimate visual material in violation of Texas Penal Code, Section 21.16(b), commonly known as the "revenge pornography" statute. This is an appeal from the trial court's denial of Jones's pretrial Application for Writ of Habeas Corpus, in which he alleged that Section 21.16(b) is unconstitutional on its face because it violates the First Amendment to the United States Constitution. Jones raises two issues on appeal. We reverse and remand.

## BACKGROUND

Because this appeal presents a facial challenge to a statute, a detailed rendition of the facts is unnecessary for its disposition. We therefore provide only a brief procedural history.

Jones was charged by information with unlawful disclosure of intimate visual material. On September 6, 2017, Jones filed an Application for Writ of Habeas Corpus, in which he argued that Texas Penal Code, Section 21.16(b) is unconstitutional on its face. On October 23, 2017, the trial court denied Jones's application, and this appeal followed.

---

[1] The Office of the Attorney General for the State of Texas filed a Brief of Amicus Curiae in support of the State's motion for rehearing. Jack Roady and Alan Curry of the District Attorney's Office of Galveston County Texas filed an additional Brief of Amicus Curiae in support of the State's motion.

## CONSTITUTIONALITY OF TEXAS PENAL CODE, SECTION 21.16(b)

In his first issue, Jones argues that Section 21.16(b) is facially overbroad under the First Amendment to the United States Constitution. Section 21.16(b) sets forth, in pertinent part, as follows:

> A person commits an offense if:
>
> (1) without the effective consent of the depicted person, the person intentionally discloses visual material depicting another person with the person's intimate parts exposed or engaged in sexual conduct;
>
> (2) the visual material was obtained by the person or created under circumstances in which the depicted person had a reasonable expectation that the visual material would remain private;
>
> (3) the disclosure of the visual material causes harm to the depicted person; and
>
> (4) the disclosure of the visual material reveals the identity of the depicted person in any manner[.]

TEX. PENAL CODE ANN. § 21.16(b) (West Supp. 2017). Under this section, "intimate parts" means "the naked genitals, pubic area, anus, buttocks, or female nipple of a person." *Id.* § 21.16(a)(1). "Visual material" includes "any film, photograph, videotape, negative, or slide or any photographic reproduction that contains or incorporates in any manner any film, photograph, videotape, negative, or slide." *Id.* § 21.16(a)(5)(A). It further includes "any disk, diskette, or other physical medium that allows an image to be displayed on a computer or other video screen and any image transmitted to a computer or other video screen by telephone line, cable, satellite transmission, or other method." *Id.* § 21.16(a)(5)(B).

### Standard of Review

A claim that a statute is unconstitutional on its face may be raised by a pretrial writ of habeas corpus. *Ex Parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001). Habeas corpus preconviction proceedings are separate criminal actions, and the applicant has the right to an immediate appeal before trial begins. *Greenwell v. Court of Appeals for the Thirteenth Judicial Dist.*, 159 S.W.3d 645, 650 (Tex. Crim. App. 2005).

We review a trial court's decision to grant or deny an application for writ of habeas corpus under an abuse of discretion standard. *See Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *Ex parte Thompson*, 414 S.W.3d 872, 875 (Tex. App.–San Antonio 2013),

*aff'd*, 442 S.W.3d 325 (Tex. Crim. App. 2014). However, when the trial court's ruling and determination of the ultimate issue turns on the application of the law, such as the constitutionality of a statute, we review the trial court's ruling de novo. ***Ex parte Peterson***, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled in part on other grounds by* ***Ex parte Lewis***, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007); *see* ***Thompson***, 414 S.W.3d at 875–76.

Furthermore, we review the constitutionality of a criminal statute de novo. ***Byrne v. State***, 358 S.W.3d 745, 748 (Tex. App.–San Antonio 2011, no pet.). When a statute is attacked on constitutional grounds, we ordinarily presume the statute is valid and that the legislature has not acted unreasonably or arbitrarily. ***State v. Rosseau***, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). The burden rests upon the individual who challenges the statute to establish its unconstitutionality. ***Id.*** However, when the government seeks to restrict speech based on its content, the usual presumption of constitutionality afforded to legislative enactments is reversed. ***United States v. Playboy Entm't Grp., Inc.***, 529 U.S. 803, 817, 120 S. Ct. 1878, 1888, 146 L. Ed. 2d 865 (2000); ***Thompson***, 414 S.W.3d at 876. Content-based regulations are presumptively invalid, and the government bears the burden to rebut that presumption. ***Ashcroft v. Am. Civil Liberties Union***, 542 U.S. 656, 660, 124 S. Ct. 2783, 2788, 159 L. Ed. 2d 690 (2004); ***Thompson***, 442 S.W.3d at 348.

Lastly, a question of statutory construction presents a question of law, which we review de novo. *See* ***Liverman v. State***, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015). In construing a statute, we give effect to the plain meaning of its language, unless the statute is ambiguous or the plain meaning would lead to absurd results that the legislature could not have possibly intended. ***Id.*** In determining plain meaning, we employ the rules of grammar and usage, and we presume that every word in a statute has been used for a purpose and that each word, clause, and sentence should be given effect if reasonably possible. ***Id.*** If a word or a phrase has acquired a technical or particular meaning, we construe the word or phrase accordingly. ***Id.*** If, after using these tools of construction, the language of the statute is ambiguous, we can resort to extratextual factors to determine the statute's meaning. ***Id.*** "Ambiguity exists when the statutory language may be understood by reasonably well-informed persons in two or more different senses." ***Id.***

## First Amendment - The Statute's Regulation of Free Speech

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST., Amend. 1. We first must determine whether that right to

freedom of speech is implicated in this case. The free speech protections of the First Amendment are implicated when the government seeks to regulate protected speech or expressive conduct. *See Scott v. State*, 322 S.W.3d 662, 668–69 (Tex. Crim. App. 2010). It is the obligation of the person desiring to engage in allegedly expressive conduct to demonstrate that the First Amendment applies. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294 n.5, 104 S. Ct. 3065, 3069 n.5, 82 L. Ed. 2d 221 (1984).

The Texas Court of Criminal Appeals has concluded that photographs and visual recordings are inherently expressive and that there is no need to conduct a case-specific inquiry into whether these forms of expression convey a particularized message. *See Thompson*, 442 S.W.3d at 336. The court further concluded that a person's purposeful creation of photographs and visual recordings is entitled to the same First Amendment protection as the photographs and visual recordings themselves. *Id.*; *see also Brown v. Entm't Merch. Ass'n*, 464 U.S. 786, 792 n.1, 1311 S. Ct. 2729, 2734 n.1, 180 L. Ed. 2d 708 (2011) (noting that under First Amendment analysis, there is no distinction whether government regulation applies to "creating, distributing, or consuming" speech).

In the instant case, Section 21.16(b) proscribes the disclosure of certain visual material, including any film, photograph, or videotape in various formats. Because the photographs and visual recordings are inherently expressive and the First Amendment applies to the distribution[2] of such expressive media in the same way it applies to their creation, we conclude that the right to freedom of speech is implicated in this case. *See Thompson*, 442 S.W.3d at 336; *see also Brown*, 464 U.S. at 792 n.1, 1311 S. Ct. at 2734 n.1.

## Statute's Regulation of Speech - Content-Based or Content-Neutral

We next must determine whether the statute regulates speech in a content-based or content-neutral manner. As a general rule, laws that, by their terms, distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based, whereas laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are content neutral. *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642, 114 S. Ct.

---

[2] Based on our reading of Section 21.16(b), we conclude that there is no difference under First Amendment analysis between the act of disclosing visual material and the act of distributing written works. *Cf. Brown*, 464 U.S. at 792 n.1, 1311 S. Ct. at 2734 n.1; *Compare Disclose*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2011) ("disclose" means "to expose to view" or "to make known or public") *with Distribute*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2011) ("distribute" means "to give out or deliver"). The fact that an act of disclosure may relate to something previously unknown does not, without more, implicate that the unknown thing carries an expectation of privacy.

4

2445, 2459, 129 L. Ed. 2d 497 (1994); ***Thompson***, 442 S.W.3d at 345. If it is necessary to look at the content of the speech in question to decide if the speaker violated the law, the regulation is content-based. *See **Thompson***, 442 S.W.3d at 345 (citing ***Ex parte Lo***, 424 S.W.3d 10, 15 n.12 (Tex. Crim. App. 2013)). The result of this inquiry dictates the standard of scrutiny under which we analyze the statute. Courts review content-based laws that suppress, disadvantage, or impose differential burdens on speech because of its content under a strict scrutiny standard. ***Turner Broad. Sys., Inc.***, 412 U.S. at 642, 114 S. Ct. at 2459. In contrast, content-neutral laws that govern expression but do not seek to restrict its content are subject to intermediate scrutiny. ***Id.***

In the instant case, the State conceded at oral argument that Section 21.16(b) properly is subject to strict scrutiny analysis.[3] We agree. Here, Section 21.16(b)(1) does not penalize all intentional disclosure of visual material depicting another person. *See* TEX. PENAL CODE ANN. § 21.16(b)(1). Rather, Section 21.16(b)(1) penalizes only a subset of disclosed images, those which depict another person with the person's intimate parts exposed or engaged in sexual conduct. *See **id.*** § 21.16(a)(1), (3), (b)(1). Therefore, we conclude that Section 21.16(b)(1) discriminates on the basis of content. *Cf. **Thompson***, 442 S.W.3d at 347.

## Obscene by Context

Content-based restrictions on speech have been permitted, as a general matter, only when confined to the few historic and traditional categories of expression. ***United States v. Alvarez***, 567 U.S. 709, 717, 132 S. Ct. 2537, 2544, 183 L. Ed. 2d 574 (2012); ***Morehead v. State***, 807 S.W.2d 577, 580 (Tex. Crim. App. 1991). New categories of unprotected speech may not be added to the list based on a conclusion that certain speech is too harmful to be tolerated. ***Brown***, 464 U.S. at 791, 1311 S. Ct. at 2734. Among the categories of unprotected speech are obscenity, defamation, fraud, incitement, and speech integral to criminal conduct. *See **United States v. Stevens***, 559 U.S. 460, 468–69, 130 S. Ct. 1577, 1584, 176 L. Ed. 2d 435 (2010).

The State argues in its brief that the expectation of privacy and the nonconsensual nature of the disclosure causes any visual material covered by Section 21.16(b) to be unprotected speech because it is contextually obscene.[4] We disagree. For more than forty years, the issue of

---

[3] On rehearing, the State disregards its concession made at oral argument and argues for the first time that the statute is subject to intermediate scrutiny.

[4] As noted above, the State conceded during oral argument that Section 21.16(b) appropriately is subject to strict scrutiny analysis. It is unclear whether the State, in so conceding, intended to waive its obscenity argument, to which it made no reference in its allotted time for argument. We address the issue out of the abundance of caution.

5

whether a matter is obscene, and, thereby, constitutes unprotected speech, has been a determination to be made initially by the trier of fact. *See Miller v. California*, 413 U.S. 15, 23, 93 S. Ct. 2607, 2615, 37 L. Ed. 2d 419 (1973); *see also Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 576, 122 S. Ct. 1700, 1708, 152 L. Ed. 2d 771 (2002); *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 418, 112 S. Ct. 2538, 2562, 120 L. Ed. 2d 305 (1992); *Pope v. Illinois*, 481 U.S. 497, 500, 107 S. Ct. 1918, 1920–21, 95 L. Ed. 2d 439 (1987); *Smith v. U.S.*, 431 U.S. 291, 300-01, 97 S. Ct. 1756, 1764–65, 52 L. Ed. 2d 324 (1977); *but see Jenkins v. Georgia*, 418 U.S. 153, 160–61, 94 S. Ct. 2750, 2755, 41 L. Ed. 2d 652 (1974) (noting that even though what appeals to the prurient interest or what constitutes patent offensiveness are questions of fact, juries do not have unbridled discretion in determining what is patently offensive, and appellate court may conduct independent review of constitutional claims when necessary, e.g., when a jury unanimously determines that defendant's depiction of a woman with a bare midriff is patently offensive).

Here, Section 21.16 does not include language that would permit a trier of fact to determine that the visual material disclosed is obscene. Moreover, if, as the State argues, any visual material disclosed under Section 21.16(b) is obscene, the statute is wholly redundant in light of Texas's obscenity statutes. *See* TEX. PENAL CODE ANN. §§ 43.22, 43.23 (West 2016). Thus, we decline to overstep our role by concluding that any visual material disclosed under Section 21.16(b) is obscene by its context.

**Strict Scrutiny**

Having held that the statute regulates speech on the basis of its content, we next must determine whether Section 21.16(b) satisfies strict scrutiny. Content-based regulations are presumptively invalid, and it is rare that a regulation restricting speech because of its content ever will be permissible. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571, 131 S. Ct. 2653, 2667, 180 L. Ed. 2d 544 (2011) ("In the ordinary case it is all but dispositive to conclude that a law is content-based and, in practice, viewpoint-discriminatory"); *Thompson* 442 S.W.3d at 348; *see also Brown,* 564 U.S. at 799, 131 S. Ct. at 2738. Under strict scrutiny, a regulation of expression may be upheld only if it is narrowly drawn to serve a compelling government interest. *Thompson* 442 S.W.3d at 344; *see also Brown,* 564 U.S. at 799, 131 S. Ct. at 2738. In this context, a regulation is "narrowly drawn" if it uses the least restrictive means of achieving the

6

government interest. ***Thompson***, 442 S.W.3d at 344; *see also **Playboy Entm't Grp., Inc.***, 529 U.S. at 813, 120 S. Ct. at 1888.

Here, the State argues that there is a compelling government interest in protecting an individual from a substantial invasion of his/her privacy. Privacy constitutes a compelling government interest when the privacy interest is substantial and the invasion occurs in an intolerable manner. *See **Snyder v. Phelps***, 562 U.S. 443, 459, 131 S. Ct. 1207, 1220, 179 L. Ed. 2d 172 (2011). "Substantial privacy interests are invaded in an intolerable manner when a person is photographed without consent in a private place, such as a home, or with respect to an area of the person that is not exposed to the general public, such as up a skirt." ***Thompson***, 442 S.W.3d at 348. It is apparent from the statute that the legislature sought to apply this statute to instances where the depicted person had a reasonable expectation that the visual material, would remain private. *See* TEX. PENAL CODE ANN. § 21.16(b)(2).[5] And by its reference to "intimate parts," it apparently sought to apply the statute to visual material depicting body parts ordinarily covered by clothing. Yet, even assuming without deciding that Section 21.16 was enacted to protect this sort of substantial privacy interest, the outcome would not differ.

As set forth previously, under its plain, unambiguous[6] meaning, Section 21.16(b)(1) applies where the visual material was obtained under circumstances in which the depicted person had a reasonable expectation that the visual material would remain private or created under such circumstances. *See **id.*** § 21.16(b)(2).[7] The unambiguous language of Section 21.16(b)(2) is

---

[5] However, we note that the statute can apply in situations where the depicted party created or consented to the creation of the visual material or voluntarily transmitted the visual material to the actor. *See* TEX. PENAL CODE ANN. § 21.16(e).

[6] The parties do not argue that the plain language of the statute is ambiguous. We likewise conclude that the plain language of the statute is unambiguous.

[7] Broken down into its elements, the plain, unambiguous language of Section 21.16(b)(2) reads as follows:

> The visual material
> (a) was
> > (i) obtained *by the person*
> > **or**
> > (ii) created
> (b) under circumstances in which the depicted person had a reasonable expectation that the visual material would remain private.

*See **id.*** (emphasis added). On rehearing, the State argues that this is the correct grammatical interpretation of Section 21.16(b)(2). We agree.

7

written disjunctively.[8]  The problematic result of the disjunctive structure of Section 21.16(b)(2) is best illustrated by way of the following hypothetical:[9]

> Adam and Barbara are in a committed relationship.  One evening, in their home, during a moment of passion, Adam asks Barbara if he can take a nude photograph of her.  Barbara consents, but before Adam takes the picture, she tells him that he must not show the photograph to anyone else.  Adam promises that he will never show the picture to another living soul, and takes a photograph of Barbara in front of a plain, white background with her breasts exposed.
>
> A few months pass, and Adam and Barbara break up after Adam discovers that Barbara has had an affair.  A few weeks later, Adam rediscovers the topless photo he took of Barbara.  Feeling angry and betrayed, Adam emails the photo without comment to several of his friends, including Charlie.  Charlie never had met Barbara and, therefore, does not recognize her.  But he likes the photograph and forwards the email without comment to some of his friends, one of whom, unbeknownst to Charlie, is Barbara's coworker, Donna.  Donna recognizes Barbara and shows the picture to Barbara's supervisor, who terminates Barbara's employment.
>
> Meanwhile, Adam also emails the picture to Ed.  This time, however, Adam writes in the body of the email, "She thought I never would show anyone."  Ed reads the email and forwards it with the attachment to several friends.

In this scenario, Adam and Ed can be charged under Section 21.16(b),[10] but so can Charlie and Donna.  Charlie has a First Amendment right to share a photograph.  *See **Thompson***, 442 S.W.3d at 336; *see also **Brown***, 464 U.S. at 792 n.1, 1311 S. Ct. at 2734 n.1 (noting that under First Amendment analysis, there is no distinction whether government regulation applies to "creating, distributing, or consuming" speech).  Charlie had no reason to know that the photograph was created under circumstances under which Barbara had a reasonable expectation that the photograph would remain private.[11]  Charlie was not aware of Barbara's conditions posed to Adam immediately prior to the photograph's creation, nor did he receive the photograph with

---

[8] A "disjunctive allegation" is a "statement in . . . [an] indictment that expresses something in the alternative, [usually] with the conjunction 'or[.]'" *Disjunctive allegation*, BLACK'S LAW DICTIONARY (10th ed. 2009).

[9] The persons named in this hypothetical scenario are not intended to depict any actual persons.  The naming convention chosen uses the first letter of each name occurring in an alphabetical pattern determined by the hypothetical person's order of appearance.

[10] Adam had knowledge of the circumstances surrounding the creation of the photograph and Barbara's privacy expectation.  Ed obtained the photograph under circumstances in which he was made aware that Barbara expected the photograph would remain private.

[11] Unlike the verb "obtained," which is modified by the adverbial prepositional phrase "by the person," the verb "created" contains no such modifying language.  As a result, the statute can apply under circumstances where a person uninvolved in the creation of the offending visual material obtains that visual material without knowledge of the circumstances surrounding its creation, under which the depicted person's privacy expectation arose.

any commentary from Adam that would make him aware of this privacy expectation on Barbara's part. In fact, there is nothing to suggest that Charlie could not reasonably have believed that Adam found this picture on a public website[12] or had been given permission by the depicted person to share the image with others. Further still, Charlie did not intend to harm[13] the depicted person.[14] Lastly, Charlie did not and could not identify the depicted person because he did not know Barbara.[15] Yet, under the disjunctive language used in Section 21.16(b)(2), Charlie nonetheless is culpable despite his having no knowledge of the circumstances surrounding the photograph's creation or the depicted person's privacy expectation arising thereunder.

We remain mindful that content-based regulations are presumptively invalid. *See* ***Thompson***, 442 S.W.3d at 348. At the very least, Section 21.16(b)(2) could be narrowed by requiring that the disclosing person have knowledge of the circumstances giving rise to the depicted person's privacy expectation. But because Section 21.16(b) does not use the least restrictive means of achieving what we have assumed to be the compelling government interest of preventing the intolerable invasion of a substantial privacy interest, it is an invalid content-based restriction in violation of the First Amendment. *See **id.***

**Overbreadth**

Having found the statute to be an invalid content-based restriction, we question whether we need to address overbreadth. ***Id.*** (citing ***R.A.V.***, 505 U.S. at 381 n.3, 112 S. Ct. at 2542 (contrasting technical "overbreadth" claim-that regulation violated rights of too many third parties-with claim that statute restricted more speech than the constitution permits, even as to the defendant, because it was content based)). In an abundance of caution, we address whether the unconstitutional reach of the statute is substantial enough to warrant a holding of facial invalidity, despite any legitimate applications of the statute. *See **Thompson***, 442 S.W.3d at 349.

---

[12] "Privacy interests fade once information already appears on the public record." ***Thompson***, 442 S.W.3d at 343–44.

[13] "Harm" is defined broadly as "anything reasonably regarded as loss, disadvantage, or injury." TEX. PENAL CODE ANN. § 1.07(a)(25) (West Supp. 2017).

[14] The statute does not require that there be an intent to cause harm to the depicted person. *See* TEX. PENAL CODE ANN. § 21.16(b)(1). Instead, it requires only that the disclosure be intentional. *See **id.***

[15] The statute does not require that the disclosing person identify the depicted person. *See* TEX. PENAL CODE ANN. § 21.16(b)(4). Rather, it provides that the disclosure of the visual material may reveal the identity of the depicted person by, among other ways, subsequent information or material related to the visual material or information or material provided by a third party in response to the disclosure of the material. *See **id.***

As we explained above, Section 21.16(b) can apply to a situation in which (1) a photograph is taken depicting a person's intimate parts, (2) the circumstances of its creation indicate that the depicted person has a reasonable expectation of privacy, and (3) the photograph ultimately is shared by persons who had no knowledge or reason to know of the circumstances surrounding its creation, under which the depicted person's reasonable expectation of privacy arose.

The overbreadth doctrine is "strong medicine" to be employed with hesitation and only as a last resort. *See Thompson*, 442 S.W.3d at 349 (citing *New York v. Ferber*, 458 U.S. 747, 769, 102 S. Ct. 3348, 3361, 73 L. Ed. 2d 1113 (1982)). The overbreadth of a statute not only must "be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Ferber*, 458 U.S. at 770, 102 S. Ct. 3361–62. To be held unconstitutional under the overbreadth doctrine, a statute must be found to "prohibit[ ] a substantial amount of protected expression." *Ashcroft*, 535 U.S. at 244, 122 S. Ct. at 1399. The danger that the statute will be unconstitutionally applied must be "realistic." *Regan v. Time, Inc.*, 468 U.S. 641, 651 n.8, 104 S. Ct. 3262, 3268 n.8, 82 L. Ed. 2d 487 (1984).

Today, a person can share a photograph or video with an untold number of people with a mere click of a button.[16] The daily sharing of visual material, for many, has become almost ritualistic. And once the act of sharing is accomplished, it is highly questionable whether that act ever can be completely rescinded. But assuming that the visual material is not otherwise protected, these persons are acting within their rights when they share visual material with others. *See Thompson*, 442 S.W.3d at 336, 343–44.

A statute likely is to be found overbroad if the criminal prohibition it creates is of "alarming breadth." *See Stevens*, 559 U.S. at 474, 130 S. Ct. at 1588. Such is the case with the current statute. Section 21.16 is extremely broad, applying to any person who discloses visual material depicting another person's intimate parts or a person engaged in sexual conduct, but where the disclosing person has no knowledge or reason to know the circumstances surrounding the material's creation, under which the depicted person's reasonable expectation of privacy arose. Furthermore, its application is not attenuated by the fact that the disclosing person had no intent to harm the depicted person or may have been unaware of the depicted person's identity.

---

[16] In our hypothetical, we focused on sharing photographs via email. However, a Facebook user with her account settings set to share posts as "public" can share a picture to her Facebook page that not only can be viewed by the nearly two billion Facebook users, but also by any other person with internet access whose access to Facebook is not otherwise restricted.

Accordingly, we conclude that the criminal prohibition Section 21.16(b) creates is of "alarming breadth" that is "real" and "substantial." *See Stevens*, 559 U.S. at 474, 130 S. Ct. at 1588; *Ferber*, 458 U.S. at 770, 102 S. Ct. at 3361–62.

## Summation

We have concluded that Section 21.16(b) is an invalid content-based restriction and overbroad in the sense that it violates rights of too many third parties by restricting more speech than the Constitution permits. Accordingly, we hold that Texas Penal Code, Section 21.16(b), to the extent it proscribes the disclosure of visual material, is unconstitutional on its face in violation of the Free Speech clause of the First Amendment. Jones's first issue is sustained.[17]

### DISPOSITION

Having sustained Jones's first issue, we *reverse* the trial court's order denying Jones's Application for Writ of Habeas Corpus and *remand* the matter to the trial court *with instructions* that it *dismiss the information*.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered May 16, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[17] Because we have sustained Jones's first issue, we do not consider his second issue concerning whether a narrow interpretation of the statute will render it unconstitutionally vague. *See* TEX. R. APP. P. 47.1.