

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0552-18

### EX PARTE JORDAN BARTLETT JONES, Appellant

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TWELFTH COURT OF APPEALS
### SMITH COUNTY

**YEARY, J., filed a concurring opinion.**

### <u>CONCURRING OPINION</u>

Today the Court reverses the published court of appeals' opinion in this case in an unpublished per curiam opinion. If it were up to me alone, I would publish the Court's opinion.

Nevertheless, I agree with the Court that the "revenge porn" statute, properly construed, does not violate the First Amendment, even as it read prior to its recent amendment.[1] In my view, properly construed, it survives strict scrutiny. I also agree with the Court that it is appropriate to attach a culpable mental state to the lack-of-effective-

---

[1] Section 21.16 of the Penal Code is entitled "Unlawful Disclosure or Promotion of Intimate Visual Material." TEX. PENAL CODE § 21.16. It was amended by Acts 2019, 86th Leg., ch. 1354, § 2, eff. Sept. 1, 2019. The offense in this case occurred, however, prior to the effective date of the 2019 amendment.

consent element of the statute. But, unlike the Court, I believe the statute is readily susceptible to such a construction, and that it is not necessary for us to invoke United States Supreme Court precedents pertaining to federal principles of statutory construction. Nor do I believe that the statute must necessarily satisfy strict scrutiny before we may uphold it. Finally, I would not conduct an overbreadth analysis at all. For these reasons, I can only concur in the result the Court reaches; I cannot join its opinion.

It is incumbent upon us to construe a statute narrowly to assure its constitutionality whenever it is readily susceptible to such a construction. *Ex parte Perry*, 483 S.W.3d 884, 903 (Tex. Crim. App. 2016). Of course, we may not usurp the legislative prerogative by misrepresenting the import of a clear statute—even for the sake of rendering it constitutional. *Morehead v. State*, 807 S.W.2d 577, 581 (Tex. Crim. App. 1991); *see also Wilson v. State*, 448 S.W.3d 418, 424–25 (Tex. Crim. App. 2014) ("[W]hile we have a duty to interpret statutes in a way as to preserve their constitutionality, we can do so only to the extent that our interpretative authority permits."). In my view, the statute may readily be read to ascribe a culpable mental state to the critical circumstance surrounding conduct: lack of effective consent of the depicted person.[2] Unlike the Court, I understand the

---

[2] Prior to amendment in 2019, Section 21.16(b) of the Penal Code provided:

(b) A person commits an offense if:

    (1) without the effective consent of the depicted person, the person intentionally discloses visual material depicting another person with the person's intimate parts exposed or engaged in sexual conduct;

language of the statute to be at least susceptible to such a construction.[3] And this construction of the statute, by itself, suffices to assure that it would operate in a manner

---

> > (2) the visual material was obtained by the person or created under circumstances in which the depicted person had a reasonable expectation that the visual material would remain private;
>
> > (3) the disclosure of the visual material causes harm to the depicted person; and
>
> > (4) the disclosure of the visual material reveals the identity of the depicted person in any manner, including through:
> > > (A) any accompanying or subsequent information or material related to the visual material; or
> > >
> > > (B) information or material provided by a third party in response to the disclosure of the visual material.

TEX. PENAL CODE § 21.16(b). All further citations to Section 21.16 are to the pre-amendment statute.

[3] In *People v. Austin*, 155 N.E.3d 439 (Ill. 2019), *cert. denied*, 141 S. Ct. 233 (2020), the Illinois Supreme Court construed a statute very similar to our own—except for the fact that it *expressly* attaches a culpable mental state to the lack of consent element of the offense. The Illinois statute made it an offense for a person to commit:

> (b) . . . non-consensual dissemination of private sexual images when he or she:
>
> > (1) intentionally disseminates an image of another person:
> >
> > > (A) who is at least 18 years of age; and
> > >
> > > (B) who is identifiable from the image itself or information displayed in connection with the image; and
> > >
> > > (C) who is engaged in a sexual act or whose intimate parts are exposed, in whole or in part; and
> >
> > (2) obtains the image under circumstances in which a reasonable person would know or understand that the image was to remain private; and

that does not offend the First Amendment. After all, if the depicted person consents to the disclosure, it would not matter whether that person harbored a reasonable expectation of non-disclosure at the time the visual material was obtained by the actor. It also would not matter whether the actor reveals the depicted person's identity. Ultimately, the depicted person's effective consent, alone, determines the constitutionality of proscribing the disclosure of otherwise constitutionally protected, sexually oriented visual material.

## I. THE PROPER CONSTRUCTION OF THE STATUTE

The United States Supreme Court has regarded non-obscene sexually oriented visual material—also known as non-obscene pornography—as protected speech. *United States v. Williams*, 553 U.S. 285, 288 (2008). If ever non-obscene pornography may be regulated without violating the United States Supreme Court's First Amendment precedents, it must be when the person depicted in the pornographic material has not consented to its disclosure. The reason that "revenge porn" may be prohibited consistent with the Supreme Court's First Amendment jurisprudence, if at all, is that it is disclosed without the effective consent of the depicted person, thereby invading the substantial personal privacy interest of the depicted person in an essentially intolerable manner. *See Scott v. State*, 322 S.W.3d 662, 668–69 (Tex. Crim. App. 2010) ("The State may lawfully

---

(3) knows or should have known that the person in the image has not consented to the dissemination.

720 ILCS 5/11-23.5(b). The Illinois Supreme Court observed about this provision that "[t]he lack of consent to dissemination forms the core of the statute and its protective purpose." *People v. Austin*, 155 N.E.3d at 465. "Where the person portrayed in the image has consented to its disclosure, the statute simply does not apply and poses no restriction on the distribution of the image to others." *Id.*

proscribe communicative conduct (i.e., the communication of ideas, opinions, and information) that invades the substantial privacy interests of another in an essentially intolerable manner.").

Lack of consent is, thus, a circumstance surrounding the conduct of disclosure that would serve to separate non-obscene pornography that may be constitutionally regulated from non-obscene pornography that may not. It is therefore essential to assign a culpable mental state to that circumstance—both from the standpoint of ordinary principles of criminal liability, *see Robinson v. State*, 466 S.W.3d 166, 171 (Tex. Crim. App. 2015) ("[W]hen the circumstances of the conduct render specific conduct unlawful, a culpable mental state must attach to the circumstances of the conduct."), and also to assure that it may be regulated despite its jurisprudential status as protected speech.

The revenge porn statute begins (as do so many penal provisions) with the simple assertion that "[a] person commits an offense if[,]" followed by a colon. TEX. PENAL CODE § 21.16(b). The sub-subsection that immediately follows the colon contains the only culpable mental state that appears explicitly in the statute:

> (1) without the effective consent of the depicted person, the person *intentionally* discloses visual material depicting another person with the person's intimate parts exposed or engaged in sexual conduct[.]

*Id*. § (b)(1) (emphasis added). Plainly, the disclosure itself must be intentional, since "discloses" is the verb that "intentionally" directly and unequivocally modifies. The most efficacious way to construe the statute so as not to offend the United States Supreme Court-protected right of individuals to share non-obscene pornography is to understand the statute to attach a culpable mental state not only to the disclosure-element itself, but also to the

equally indispensable element of lack of effective consent to the disclosure. And I believe the Texas Legislature did exactly that.

Unlike the Court, I do not find it unambiguously clear, from the face of Section 21.16(b), that it fails by its terms to incorporate a culpable mental state into this critical circumstance-surrounding-conduct element. *See* Majority Opinion at 22 ("[W]e cannot read the adverb 'intentionally' to modify the effective consent clause because reading 'intentionally' backwards up the statute goes against the plain reading of the text in context under common grammar and usage rules."). Quite the opposite. I believe the statute is readily susceptible to the application of at least a "knowing" culpable mental state to the lack-of-effective-consent element. Certainly, the prosecutor who drafted the indictment in this case understood the statute in this way. *See* Majority Opinion at 10 (quoting the indictment's allegation that Appellant acted "knowingly without the effective consent of" the complainant by "intentionally disclos[ing]"). By endorsing that interpretation, we would better fulfill our obligation to construe the statute narrowly so as to assure its constitutionality.

I believe we can more than reasonably construe Section 21.16(b) in this way. It reads similarly to the Unauthorized Use of a Vehicle statute, which we construed in *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). That statute read:

> (a) A person commits an offense if he intentionally or knowingly operates another's [vehicle] without the effective consent of the owner.

TEX. PENAL CODE § 31.07(a). Although the culpable mental state directly modified the word "operates" in this provision, we held that, because such conduct would be innocuous

in the absence of the circumstance surrounding that conduct, we should read the culpable mental state to modify that element of the offense as well, explaining that "some form of culpability must apply to those 'conduct elements' which make the overall conduct criminal." *McQueen*, 781 S.W.2d at 604. *See also Delay v. State*, 443 S.W.3d 909, 923–24 (Tex. Crim. App. 2014) (construing a culpable mental state to modify not only the act prohibited, but also the circumstance under which committing the otherwise innocuous act becomes "intrinsically blameworthy"). This amounts to a kind of presumption that a culpable mental state should be applied to a circumstance surrounding conduct whenever that circumstance constitutes the pivotal element that renders otherwise innocent conduct criminally offensive. This Court's own cases regarding statutory construction support this approach; we need not resort to federal cases that apply federal principles of statutory interpretation that are not binding on us.[4]

---

[4] By analogy only, in construing federal statutes, the United States Supreme Court indulges an "interpretive maxim" that presumes the application of scienter to modify "elements that criminalize otherwise innocent conduct"—whether or not the statute otherwise specifies a scienter requirement at any point in its text. *Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019); *see id.*, at 2197 ("It is therefore the defendant's *status*, and not his conduct alone, that makes the difference. Without knowledge of that status, the defendant may well lack the intent needed to make his behavior wrongful."). Indeed, under these circumstances, the Supreme Court has "interpreted statutes to include a scienter requirement even where the most grammatical reading of the statute does not support one." *Id*. (internal quotation marks omitted). It would seem even more imperative to construe a statute in this way whenever, as here, the constitutionality of the statute turns on the presence or absence of a culpable mental state applicable to the circumstances-of-the-offense element, and the statute is readily susceptible to such an interpretation. "The federal constitution affords the states broad authority to construe a statute narrowly to avoid a constitutional violation." *State v. Johnson*, 475 S.W.3d 860, 872 (Tex. Crim. App. 2015). And, once we have so construed a statute, the United States Supreme Court will be bound by that construction in reviewing its constitutionality. *See, e.g., Wisconsin v. Mitchell*, 508 U.S. 476, 483 (1993) ("There is no doubt that we are bound by a state court's construction of a state statute.").

It is true, as the Court notes, that in Section 21.16(b)(1), the clause "without the effective consent" appears before the culpable mental state, not after (as in Section 31.07(a), the statute at issue in *McQueen*). Majority Opinion at 21. But that does not mean that, syntactically, the culpable mental state may not be read to apply to that circumstance as well as to the act of disclosure. The way I see it, the syntactical difference between:

> without the effective consent of the depicted person, the person intentionally discloses visual material depicting another person . . .

(as the Section 21.16(b)(1) is phrased) and:

> the person intentionally discloses visual material depicting another person without the effective consent of the depicted person . . .

does not change the substantive meaning of the passage. If it is permissible to read a culpable mental state to travel down to the circumstance surrounding conduct in the second phrase, it should be equally permissible to read it to relate back to the circumstance surrounding conduct in the first. It is no great leap to read the statute this way in order to assure its constitutionality. If the word "intentionally" may be read to apply to the later phrase "without the effective consent of the depicted person," as in the second example given above—which is more like the statute we construed in *McQueen*—it is not clear why it may not also be read to modify that same phrase just because it comes before the modifier and is separated by a comma. Also, and again, even if one were to consider the statute to be ambiguous with regard to whether it may be read in this way, I believe we could resolve that ambiguity in favor of a constitutional construction of the statute.

Here is how I understand Section 21.16(b)(1). The Grammar Canon provides: "Words are to be given the meaning that proper grammar and usage would assign them."

Antonin Scalia & Brian A. Garner, *Reading Law*, p. 140 (Thompson/West 2012). "Without the effective consent of the depicted person" is itself an adverbial phrase. It is a modifier. In the sentence at issue here, at the very outset of the sentence, the phrase "without the effective consent of the depicted person" immediately modifies the later appearing verb: "discloses." The relevant definition of the word "modify" is: "to limit in meaning." WEBSTER'S NEW WORLD DICTIONARY OF THE AMERICAN LANGUAGE (Simon & Schuster 1984). So, at the very outset of the sentence, before doing anything else, the Legislature limited the meaning of the later appearing word "discloses" to: "discloses without the effective consent of the depicted person." The Legislature only then added the extra adverb "intentionally" just before the previously modified and limited verb "discloses (without the effective consent of the depicted person)." The word "intentionally" (the second adverbial modifier in the sentence), therefore may be read only to limit/modify the previously limited/modified version of that word: "discloses without the effective consent of the depicted person." Understood in this way, the word "intentionally" may be read to require an awareness on the part of the actor both with regard to the verb: "discloses," and with regard to the adverbial phrase that previously limited that same verb: "without the effective consent of the depicted person." In other words, by the time the word "intentionally" has an opportunity to modify the word "discloses," the only meaning of the word "discloses" that remains to be modified by the word "intentionally" is "discloses without the effective consent of the depicted person." Nothing that I find in the section on "Adverbs" in Professor Garner's Manual on Legal Style precludes this understanding. Bryan A. Garner, *The Redbook: A Manual on 20 Legal Style*, p.150-152 (1st. ed. 2002).

It is true, as the Court observes, Majority Opinion at 22–23, that the only mental state provided in Section 21.16(b)(1) ("intentionally") does not ordinarily apply to a circumstance-surrounding-conduct type of element. *See Lugo-Lugo v. State*, 650 S.W.2d 72, 87 (Tex. Crim. App. 1983) (Clinton, J., concurring). It is nevertheless appropriate, under our precedents, to read a statute to imply a lesser culpable mental state ("knowledge" or "recklessness") to a lack-of-effective-consent element. *See Sanchez v. State*, 995 S.W.2d 677, 685 & n.7 (Tex. Crim. App. 1999) (construing the explicit "intentional" culpable mental state of the official-oppression-by-sexual-harassment statute, as it applied to the "unwelcome-sexual-advances" definition of sexual harassment, to require no greater scienter than an awareness (*i.e.*, knowledge) by the actor that his sexual advances were unwelcome). Read in this way, Section 21.16(b) is nearly identical to the Illinois statute that was recently found by that state's highest court to survive at least intermediate scrutiny. *People v. Austin*, 155 N.E.3d 439, 459–66 (Ill. 2019), *cert. denied*, 141 S. Ct. 233 (2020).

This construction of the statute mollifies the court of appeals' concerns about the constitutionality of the statute. The court of appeals believed that Section 21.16(b) failed to satisfy the First Amendment because it might apply to a person who passed along a sexually explicit image he did not create without any awareness that the person depicted had not consented to the disclosure of the image. *Ex parte Jones*, ___ S.W.3d ___, 2018 WL 2228888, at *5–6 (Tex. App.—Tyler 2018). That view presupposes a reading of the statute that refuses to ascribe a culpable mental state to the lack-of-effective-consent element of the offense. The court of appeals also concluded that Section 21.16(b) was unconstitutionally overbroad—again, based upon a reading of the statute that refused to

ascribe a culpable mental state to the lack-of-effective-consent element. *See id*., 2018 WL 2228888, at *7 (concluding that the statute "is extremely broad" in that it could criminalize the disclosure of a sexually private image without any "knowledge or reason to know" that, under the circumstances, the person depicted in the image had not consented to its dissemination and had expected it to remain private). My reading of the statute, were it to be adopted, would suffice to put these concerns to rest.

## II.  SHOULD INTERMEDIATE, NOT STRICT, SCRUTINY APPLY?

The State argues that Section 21.16(b) should be tested against the First Amendment's intermediate scrutiny test, rather than strict scrutiny, because it does not target speech *per se*, but only the secondary effect that such speech has on sexual privacy whenever the depicted person has not consented to the disclosure. I am inclined to agree with this proposition. Section 21.16(b) does not target non-obscene pornography because of its expressive content. Nor does it ban all (or probably even very much, relatively speaking) non-obscene pornography. Properly construed, it only limits the disclosure of non-obscene pornography that the actor knows, or is reckless whether, the depicted person has not consented to; and it does so for the purpose of protecting the depicted person's personal sexual privacy. In that sense, it is roughly analogous to the zoning ordinance regulating adult movie houses that was at issue in *City of Renton v. Playtime Theaters*, *Inc*., 475 U.S. 41 (1986). That ordinance prohibited the exhibition of all adult movies in theaters located near residential zones, churches, parks, and schools. *Id*. at 43. The United States Supreme Court measured the ordinance against an intermediate scrutiny standard rather

than strict scrutiny because it was "aimed not at the *content* of the films shown . . . but rather at the *secondary effects* of such theaters on the surrounding community." *Id*. at 47.

As with the zoning ordinance in *Renton*, Section 21.16(b) does not prohibit the disclosure of non-obscene pornography—at least, not on the basis of its constitutionally-protected, sexually-explicit content. It simply prohibits the disclosure of non-obscene pornography that the depicted person has not effectively consented to, thereby preserving that person's personal sexual privacy. "Government regulation of expressive activity is content neutral so long as it is *justified* without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citations and internal quotation marks omitted). The justification for Section 21.16(b) has nothing to do with whatever value non-obscene pornography may have as expressive activity, and everything to do with the potentially devastating secondary effect that disclosure of sexually explicit material may have upon the non-consenting person depicted therein. It is not a regulation "that focus[es] on the direct impact of speech on its audience[,]" as was the case in *Boos v. Barry*, 485 U.S. 312, 320–21 (1988) (plurality opinion), in which *Renton* was distinguished. Rather, it focuses on the direct impact that the disclosure will have on the non-consenting person depicted in the visual material.

For this reason, it is at least arguable that it should only have to satisfy an intermediate scrutiny standard, under the rationale of *Renton*. The Illinois Supreme Court recently concluded that its own revenge porn statute—which is remarkably similar to our own, so long as we construe Section 21.16(b) to incorporate a culpable mental state as to lack of effective consent—to be subject only to (and to satisfy) the First Amendment's

intermediate scrutiny standard, analogizing to *Renton. People v. Austin*, 155 N.E.3d 439, 456–59, 466 (Ill. 2019), *cert. denied*, 141 S. Ct. 233 (2020).

### III. STANDING TO APPLY OVERBREADTH?

There is some suggestion in Supreme Court precedents that even a statute that targets wholly unprotected speech, such as obscenity or child pornography, may yet be subject to First Amendment condemnation under the overbreadth doctrine—at least in the absence of a scienter requirement in the proscribing statute. *See New York v. Ferber*, 458 U.S. 747, 764 (1982) ("As with obscenity laws, criminal responsibility [for distributing child pornography] may not be imposed without some element of scienter on the part of the defendant.") (citing *Smith v. California*, 361 U.S. 147 (1959)). But, as I have already noted, the indictment in this case alleges that Appellant *knew* he lacked the consent of the depicted person, so the statute does not operate unconstitutionally as to *him*.

Elsewhere, in the context of assessing the constitutionality of our flag-destruction statute, I have developed my own view that, as a state court, "we ought to refuse to address" questions of overbreadth "when they are presented by individuals who have suffered no constitutional deprivation." *State v. Johnson*, 475 S.W.3d 860, 887 & n.4 (Tex. Crim. App. 2015) (Yeary, J., dissenting). Unlike the Court, "I do not believe that the relaxed standing requirement employed by the United States Supreme Court for overbreadth claims is a substantive guarantee of the First Amendment." *Id*. at 889 (Yeary, J., dissenting).[5] The

---

[5] As I explained in *Johnson*:

> Consistent with the requirement that a claimant demonstrate standing before being allowed to advance a claim, the Supreme Court ordinarily requires adherence to the rule that, "a person to whom a statute may constitutionally be applied will

State in this case has committed itself, by pleading in the indictment that Appellant was aware that he lacked the effective consent of the depicted person, to prove a violation of the statute under circumstances in which his conduct is not constitutionally protected. That being the case, I do not think that Appellant should be permitted to claim in Texas courts to have standing to invoke the overbreadth doctrine to invalidate the statute in this case, and I believe the Court should therefore refrain from entertaining such a claim.[6]

FILED:                May 26, 2021
PUBLISH

---

not be heard to challenge [the] statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Broadrick v. Oklahoma*, 413 U.S. [601,] 610 [(1973)]. That Court has apparently relied on "prudential" considerations to relax this ordinary rule of standing in cases alleging First Amendment overbreadth. However, I do not believe that we in Texas are free to interpret our constitutionally mandated separation of powers provision as liberally as the United States Supreme Court has interpreted its own court-made federal doctrine of separation of powers, pursuant to merely "prudential" considerations. Consequently, in this case, because Appellee cannot show that his own First Amendment rights have been violated, I would conclude Appellee's claim—that the Texas destruction-of-a-flag statute is facially unconstitutional—is barred.

475 S.W.3d at 892–93 (Yeary, J., dissenting).

[6] Obviously, even according to my own understanding, Appellant might still be able to pursue his overbreadth claim in federal court.